UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-60504
_____


PARACELSUS SENATOBIA COMMUNITY HOSPITAL, INC.,
doing business as Senatobia Community Hospital,

Plaintiff-Appellant,

versus

HELEN WETHERBEE, Executive Director, Division of Medicaid;
STATE OF MISSISSIPPI, Governor,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Mississippi
(3:95-CV-506-BN)
_____

October 15, 1997

Before JONES, STEWART, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

        Appellant Paracelsus Senatobia Community Hospital, Inc.

(the "Hospital") appeals the district court's order denying its

claims for prospective injunctive and/or declaratory relief against

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

appellees Helen Wetherbee in her official capacity as Executive Director of Mississippi's Division of Medicaid ("Wetherbee") and the State's Division of Medicaid. For the following reasons, we dismiss the appeal as moot.

**BACKGROUND**

Although publicly owned by the City of Senatobia, Mississippi, the Hospital is leased to and operated by a private corporation, Paracelsus Senatobia Community Hospital, Inc. Wetherbee is the Executive Director of the Division of Medicaid, the state agency responsible for administering the Mississippi State Medicaid Plan.

In 1965, Congress enacted the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et. seq.* (1992 & Supp. 1997). The purpose of the Medicaid Act was to establish, through a joint federal and state cost-sharing system, a program of medical assistance to low income families and individuals. States which elect to participate in Medicaid are eligible to receive federal funds in return for administering their Medicaid program.

In order to be eligible for federal funds, a participating state must submit a State Plan to the Health Care Financing Administration of the Department of Health and Human Services ("HCFA"). *See* 42 U.S.C. § 1396a(a). In its Plan, each participating state develops a schedule or methodology that

2

establishes the fee that the state will pay to a service provider for every item or service covered under its Medicaid plan.

In 1981, hoping to contain escalating Medicaid costs, Congress enacted the Boren Amendment which provided for participating hospitals to be reimbursed "reasonable and adequate [costs] to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A).[2] In developing new reimbursement rates, the states are required to "take into account the situation of hospitals which serve a disproportionate number of low income patients." *See id.* To meet this requirement, State Plans must generally include a provision that allows for hospitals which qualify as disproportionate share hospitals to receive some type of payment adjustment in addition to the regular reimbursements they receive for in-patient hospital services. *See* 42 U.S.C. § 1396r-4(c).[3]

As part of the Omnibus Budget Reconciliation Act of 1993 ("OBRA 93"), Congress implemented certain changes which directly affected the disproportionate share hospital ("DSH")program. As

---

[2]     This standard replaced the previous "reasonable cost" standard.

[3]     Under the Medicaid Act, a hospital qualifies as a disproportionate share hospital if its Medicaid inpatient utilization rate, as defined in 42 U.S.C. § 1396r-4(b)(2), is at least one standard deviation above the mean Medicaid inpatient utilization rate for hospitals receiving Medicaid payments in the State or its low-income utilization rate, as defined in 42 U.S.C. § 1396r-4(b)(3), exceeds twenty-five percent.

amended by OBRA 93, the Medicaid Act makes a distinction between "low" disproportionate share hospitals and "high" disproportionate share hospitals. *See* 42 U.S.C. § 1396r-4(g). A high DSH was defined by the statute as one which is owned or operated by a State (or unit of state government) and meets the other requirements of a disproportionate share hospital. *See* 42 U.S.C. § 1396r-4(g)(2)(B)(i) & (ii). In the case of a hospital qualifying as a high DSH, the Act also provided for an additional amount of payment during the "transition period":

> a payment adjustment during *a State fiscal year that begins before January 1, 1995,* shall be consistent with [the Act] if the payment adjustment does not exceed 200 percent of the costs of furnishing hospital services . . . during the year.

42 U.S.C. § 1396r-4(g)(2)(A) (emphasis added). As interpreted by the HCFA:

> The [new] law [as amended by OBRA 93] provides special treatment for certain "High Disproportionate Share Hospitals," *for the State fiscal year that begins before January 1, 1995.* During this period, the limit on the

DSH payment adjustment that such a hospital could receive is 200% of the general limit.

HCFA Summary of OBRA 93 DSH Limit Requirements (emphasis added).

On October 7, 1994, Mississippi's Department of Medicaid sent its State's new plan amendment to the HCFA. The new State Plan amendment deviated from the language of the federal statute's definition of a high DSH; its definition of a high DSH provided, *inter alia*, that the hospital be publicly owned *and* operated. The HCFA approved the State's Plan.

At the heart of the parties' dispute is that the Department of Medicaid notified the Hospital that although it qualified as a low DSH, it did not meet the requirements for high DSH status:

[The Department of Medicaid does] not understand the definition [of high DSH] to include the situation of Senatobia Hospital, which is operated by a private, proprietary entity, even though the property upon which the hospital sits is owned by the city.

Relying on the language of the 42 U.S.C. § 1396r-4(g)(2)(B) -- providing that a high DSH is one that is owned *or* operated by the State -- the Hospital responded that under federal law it was entitled to high DSH status because it was publicly owned. The Hospital also objected to the allegedly inadequate administrative procedure used in promulgating the State's rule.

In an effort to resolve this dispute between the Hospital and the Department of Medicaid, an administrative hearing was held.

5

The hearing officer affirmed the decision of the Department of Medicaid to classify the Hospital as a low DSH. The Hospital commenced this lawsuit in Mississippi state court, and the suit was later removed to federal district court. Both parties filed motions for summary judgment. The district court granted Wetherbee's motion and held that (1) the Hospital's claim for relief under § 1396r-4(g)(2)(B) was dismissed for lack of standing because the federal statute did not provide for a private right of action cognizable under § 1983 and (2) even if there were a cognizable right of action under § 1983, the transitional nature of the high DSH provisions rendered the Hospital's claim for prospective injunctive and/or declaratory relief moot. The Hospital timely appealed.

**DISCUSSION**

Wetherbee argues that because the high DSH program, which permitted the Department of Medicaid to make additional payment adjustments for up to 200 percent of uncompensated costs, was a transition program that was available only for the state fiscal year that began before January 1, 1995, the instant appeal is moot. The Hospital disagrees.

It is well settled that this court has no authority to issue opinions, principles, or rules of law upon moot questions or abstract propositions which cannot affect the matter in issue in

6

the case before us.  *See Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12 (1992).  In such circumstances, there is no live case or controversy for this court to decide.  An exception to this general principle is the so called "capable of repetition, yet evading review" exception.  In order to fall within this exception, (1) the duration of the challenged action must be too short to enable the parties to litigate fully and (2) there must be a reasonable expectation that the same party will again be the subject to the same action.  *See Henschen v. City of Houston, Tex.,* 959 F.2d 584, 589 (5th Cir. 1992).

The high DSH program, which permitted the Department of Medicaid to make additional payment adjustments for up to 200 percent of uncompensated costs, was by its terms a transitional program that was available only for the state fiscal year that began before January 1, 1995.  That period of time has elapsed. Any opinion or prospective relief from this court concerning either the administrative procedure or the State's interpretation of defunct law would be ineffectual to resolve the parties' dispute. Moreover, there has been no showing that there is a reasonable expectation that the Hospital will again be subject to the same action.  Therefore, this action does not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine.  Accordingly, the instant litigation is moot.  *See Burke*

7

*v. Barnes,* 479 U.S. 361, 363-64 (1987) (declaratory or injunctive relief is inappropriate where the statute being challenged has been repealed or has expired).

## CONCLUSION

Because we dismiss this action as moot, we may not and do not issue any opinion regarding the merits of the various issues raised by the parties.  The appeal is DISMISSED AS MOOT.